# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | |
| FRANK ROLAND SMITH, JR. | } | CASE NO. 05-87229-JAC-7 |
| SSN: XXX-XX-4641 | } | |
| GINA MARLENE SMITH | } | |
| SSN: XXX-XX-3392, | } | |
| | } | CHAPTER 7 |
| Debtor(s). | } | |

## MEMORANDUM OPINION

On July 3, 2006, the trustee filed a motion for authority to sell assets free and clear of liens and provided notice of sale pursuant to Bankruptcy Rules 2002 and 6004. The trustee proposed to sell property described as Lot 35 of Timberland Lake Estates by private sale to Dustin Dickens for the total sum of $45,900. On July 26, 2006, the matter came before the Court for hearing on the trustee's motion. At the hearing, the attorney for the trustee notified the Court that another party, Mr. and Mrs. McKinnon, had made an offer to purchase the property for $55,000. The McKinnons appeared before the Court ready to pay $55,000 for the property, but Dickens argued that the trustee was contractually obligated to sell the property to him for $45,900. The Court continued the hearing to allow the parties an opportunity to resolve the matter.

On August 15, 2006, the trustee filed a notice of withdrawal of pleading. The trustee concluded that it would not be "in the best interest of the creditors to go forward with seeking

Bankruptcy Court authority to accept the original offer, while a significantly higher offer has been made."

On August 31, 2006, the trustee filed the motion that is currently pending before the Court for authority to sell assets and notice of intent to sell assets free and clear of liens and deadline for submitting offers. The trustee proposes to sell the property using a sealed bid process for sale to the highest bidder with a starting price of $55,000.

Dickens appeared at the hearing represented by counsel and objected to the sale by sealed bid. Dickens argues that the trustee breached his agreement to sell the property to Dickens for $45,900 with the only contingency being court approval of the sale. Prior to filing the original motion for authority to sell, the trustee asserts that he advised Dickens that he "would be unable to enter into any sales contract until after the sale was approved by the Bankruptcy Court."

Dickens admits that the trustee did not enter into a formal real estate contract to sell Dickens the property. Dickens urges the Court to find that the original motion filed by the trustee for authority to sell property was a "writing" sufficient to satisfy the Statute of Frauds set out in ALA. CODE § 8-9-2 (1975) and that same is a contract that is binding upon the estate, subject only to court approval. Dickens argues that the trustee breached the agreement to sell the property by withdrawing the motion for authority to sell assets.

The trustee argues that it is the order approving a motion for authority to sell that creates the binding contract, not the motion. Court approval is a prerequisite before a contract can become binding upon the bankruptcy estate. Moreover, the trustee argues that

2

even if the Court were to find that the original motion constituted a contract, the motion clearly provided that the sale was contingent upon Court approval and could not become binding and effective until approved by the Court.

**Conclusions of Law**

A motion filed by a trustee to sell assets free and clear of liens is not a binding contract that is enforceable against the estate until approved by the court. Some courts have held that there simply is no contract without bankruptcy court approval while other courts have indicated that a contract is simply not binding until approved by the court.[1] Once the bankruptcy court enters a final order approving a motion for authority to sell, the parties become bound to close the sale pursuant to the terms of the sale as approved by the court.

The court in *Thousand Acres Dev., LLC v. Iannacone (In re Kreger)*, 307 B.R. 106 (8th Cir. BAP 2004) found that a trustee became bound to close a sale once the order authorizing the sale became final. The purchaser filed a complaint against the Chapter 11 debtors and trustee seeking an order for specific performance of its agreement to purchase debtors' real property after the trustee notified the purchaser that he had received sufficient funds to pay all creditors from other sources and intended to release the property back to the

---

[1] *In re Asia Global Crossing,* Ltd., 326 B.R. 240 (Bankr. S.D.N.Y.2005)(explaining that prior to obtaining court approval, debtor could withdraw its § 363(b)(1) application to sell assets and abandon the contract); *G-K Dev. Co., Inc. v. Broadmoor Place Invs., L.P. (In re Broadmoor)*, 994 F.2d 744 (10th Cir. 1993); *Razorback Moving & Storage, Inc. v. Rice (In re Allison Warehouse & Transfer, Inc.)*, 145 B.R. 293 (Bankr. E.D. Ark. 1992); *In re Landscape Properties, Inc.*, 100 B.R. 445 (Bankr. E.D Ark. 1988).

debtors. The court determined that entry of the order approving the trustee's motion for authority to sell assets constituted a binding obligation of the trustee and the debtors to close the sale. The court explained that the agreement became binding when the court entered the order. The court wrote:

> The motion to approve the sale specifically states that the trustee has received an offer from Thousand Acres to purchase the property for the price of $200,000.00. Entry of the court order constitutes an acceptance of that offer. The trustee would have had a claim for breach of contract, and a right to retain the earnest money deposit, had Thousand Acres refused to complete the sale following the court's order. The order, thus, does not simply give the trustee an option to sell, as the debtors argue; otherwise, buyers would be discouraged from purchasing assets out of a bankruptcy case. Certainly buyers routinely make offers to purchase assets from a trustee, which offers are subject to higher and better offers being received at the hearing for approval of the sale. But once the order approving the sale is entered, that order represents a binding obligation, unless the order specifically provides otherwise. *(citations omitted)*.

In the present case, the Court did not enter an order approving the trustee's motion for authority to sell assets. The trustee properly informed the Court on the date of the hearing that a higher offer had been received. The McKinnons appeared at the hearing and presented their offer. Dickens argued that the trustee was bound by the terms of their agreement and objected to the consideration of the higher offer.

Similar facts are found in the case of *Siddiqui v. Gardner (In re Williamson)*, 327 B.R. 578 (Bankr. E.D. Va. 2005) in which Chapter 13 debtors accepted an offer from Siddiqui to purchase their home and moved to obtain court approval. Prior to the hearing, the debtors received a higher offer from Gardner. Debtors' counsel advised the court of the competing offers at the hearing. The offers were both written on a form sales contract and handwritten

4

on each contract was the statement that "[t]his contract is subject to bankruptcy court approval." Siddiqui argued that she had a ratified contract and that the debtors could not pursue any other contract until the court ruled on her contract. The court noted that the contract was expressly contingent upon court approval and explained that until a sale is approved the trustee retains not only the ability to continue to market the property, but in fact may have an obligation to do so. Siddiqui had no protected contract expectancy, both contractually and as a matter of bankruptcy law.

In *G-K Dev. v. Broadmoor Place Invs., L.P. (In re Broadmoor)*, 994 F.2d 744 (10th Cir. 1993), the court determined that there could be no contract absent court approval where the Chapter 11 debtor sought approval for the sale of its office building to a bidder, the bankruptcy court approved the sale to another bidder, and the unsuccessful bidder appealed. The Tenth Circuit characterized a signed agreement between the debtor and the unsuccessful bidder for the sale of assets as a mere bid. The court stated that to call the agreement a contract would be a misnomer since there could be no contract without Bankruptcy Court approval.[2]

In the present case, the sale of the debtors' real property is not in the ordinary course of business and court approval is required by § 363(b). The trustee could not have entered into an enforceable contract with Dickens to sell the property absent such approval. Moreover, the trustee advised Dickens that he would be unable to enter into a sales contract

---

[2] *In re Broadmoor,* 994 F.2d 744, 746 (10th Cir. 1993); *see also In re Landscape Properties, Inc.*, 100 B.R. 445, 447 (Bankr. E.D. Ark. 1988).

5

without court approval. The trustee was free to abandon its motion to sell assets upon being presented with a higher and better offer that would benefit the estate. The motion did not constitute a binding contract between Dickens and the trustee absent court approval. Based on the foregoing, the Court overrules Dickens' objection to the trustee's current motion for authority to sell assets and approves the motion for authority to sell assets by sealed bid.

A separate order will be entered consistent with this opinion.

Dated: October 6, 2006

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc:  Debtor(s)
     Kevin Morris, attorney for trustee
     John Zingarelli, attorney for Dustin Dickens
     Tazewell Shepard, trustee

6